## LYDIA DEAN *versus* BENJAMIN RICHMOND.

A wife divorced *a mensa et thoro* may sue or be sued as a feme sole, for property acquired or debts contracted by her subsequently to the divorce.

This Court has no authority, upon granting a divorce *a mensa et thoro*, to decree a restoration to the wife, of the personal property which belonged to her at the time of the marriage.

Such a divorce does not affect the right of the husband to reduce into possession choses in action which belonged to the wife prior to the divorce.

ASSUMPSIT upon a promissory note dated May 2, 1825, made by the defendant to the plaintiff, for 600 dollars ; interest and 100 dollars of the principal to be paid yearly.

The parties agreed, that on the 28th of November, 1824, the plaintiff intermarried with Ebenezer Dean. At that time she was seised in her own right of certain real estate ; which on the 2d of May, 1825, she and her husband conveyed to the defendant. The note sued was given as a part of the consideration mentioned in the deed, and it was then agreed by the husband, that the plaintiff should retain the note as her own property, and should receive the payment of it to her own separate use ; and she has ever since retained the note. At the term of this Court held at Taunton in April 1826 she was divorced from the bed and board of her husband, and it was decreed " that all the real and personal estate which came to the said Ebenezer by his marriage with the plaintiff should be restored to her." Upon this statement the plaintiff contended that she was entitled to recover the amount of the note.

It was also admitted, that in August 1826 the defendant, without the knowledge or consent of the plaintiff, paid over to the husband the amount of the note, taking from him a bond of indemnity.

If the Court should be of opinion that the plaintiff was entitled to recover, the defendant was to be defaulted ; if otherwise, the plaintiff was to be nonsuited.

It was further agreed, that the defendant should have, under this statement of facts, all the advantages which he could by a plea in abatement, he having in the Court of Common Pleas duly pleaded in abatement the coverture of the plaintiff.

The counsel for the defendant being called on to begin, *Baylies* and *Cobb* said it was questionable whether this note was embraced by the decree above mentioned, for although the consideration was the wife's real estate, yet the note, at the time of the divorce, was the property of the husband, and he might have declared upon it as if made to himself alone. *Shuttlesworth* v. *Noyes*, 8 Mass. R. 229 ; 3 Chit. Pl. 21 ; Chit. Bills, 25 ; *Ankerstein* v. *Clarke*, 4 T. R. 616.

The wife cannot alone sue after a divorce *a mensa et thoro*, (unless perhaps for the very purpose of enforcing the decree against the husband,) for the marriage relation still subsists ; and a defendant who is not privy to the divorce has a right to insist that the husband shall be joined in the action. 4 Bac. Abr. 555, *Marriage, &c.*, *E* 3 ; *Marshall* v. *Rutton*, 8 T. R. 545 ; *Lewis* v. *Lee*, 3 Barn. & Cressw. 291 ; Com. Dig. *Baron and Feme*, *C* 5.

*Coffin* and *Chapin, contrà.* Under our statutes a wife divorced must have a right to sue alone, for if the husband must be joined, he may release the action, and the wife, instead of being rendered more independent of him for her support, is made less so, and is thrown out of the protection of the law. Where the husband is banished, even for a limited time, or is long absent from the country, the wife may sue or be sued as a feme sole ; and the reason is, as in the present case, that she has no one to control or protect her. Upon the husband's return her right to sue terminates ; and so upon a reconciliation after a divorce from bed and board. Bac. Abr. *Baron and Feme*, *D*, *M*; 1 Pow. Contr. 75, *et seq.*, 91 ; *Gregory* v. *Paul*, 15 Mass. R. 32, [Rand's ed. 35, n. *a* ;] 2 Roper on Husb. and Wife, 123 ; *Corbett* v. *Poelnitz*, 1 T. R. 5.

This note is the property of the plaintiff. By the divorce she ceased to be under the control of her husband, and he to be bound by her contracts. Her rights and liabilities returned, in the same manner as if he had deceased. We admit that he might have reduced the note into possession before his marital rights were impaired by the divorce, but having omitted to do so, his interest in it is gone. This is according to the equity of the case, and within the intent of the

<p style="margin-left:0">Dean<br>
<i>v.</i><br>
Richmond.</p>

<p><i>April term</i><br>
1828.</p>

decree of restoration. *Stanwood* v. *Stanwood*, 17 Mass R 59 ; *Draper* v. *Jackson*, 16 Mass. R. 486 ; 2 Roper on Husb and Wife, 138 ; *Slanning* v. *Style*, 3 P. Wms. 337 ; *Rutland* v. *Molineaux*, 2 Vern. 64.

The opinion of the Court was drawn up by

PARKER C. J. The questions presented in this case are new with us, and quite important in relation to the effect of a divorce *a mensa et thoro*, upon the condition and capacity of a married woman, who has obtained a decree of that nature against her husband. Can she maintain an action in her own name only upon any contract made with her before the marriage, and left unexecuted at the time when the divorce takes place ? Can she sue in her own name for any property which she may acquire after the divorce, or for her earnings by business, labor, &c., done during her state of separation ? Can she maintain an action against her husband; should he intermeddle with the' property so acquired, or should he refuse to execute the decree by which alimony may be allowed to the wife ? In other words, is she to be treated as a feme sole, after such a decree, in all respects, or in any particular limited degree, so as to give her the right to maintain some actions and not others ? Our several statutes providing for such divorces are wholly silent on the subject. Our judicial decisions have touched only the question of enforcing the decree itself in relation to alimony. And the English cases have been confined to the discussion and adjudication of the rights and liabilities of married women separated by agreement fron their husbands by deed, in which a sufficient maintenance has been provided for them according to their rank and degree And here it is remarkable, that a unanimous decision of the whole Court of King's Bench, in the year 1786, Lord *Mansfield* and justices *Ashhurst*, *Grose* and *Buller* composing the bench, was entirely overruled' by the unanimous voice of all the judges except *Buller*, who was absent, in the year 1800. It was settled in the first case, that a married woman living separate and apart from her husband under a settlement by which a competent maintenance was secured to her, was liable as a feme sole for debts incurred by her ; and in the latter case, presenting similar facts, that a plea in abatement of cover

ture at the time when the debt accrued, was a sufficient answer to the action. The first case above alluded to is that of *Corbett* v. *Poelnitz*, 1 T. R. 5; the other is that of *Marshall* v. *Rutton*, 8 T. R. 545.

There are several intermediate cases in which the Court of King's Bench, under the chief administration of Lord *Kenyon*, and the Court of Common Pleas, seem to have been gradually undermining the decision of their celebrated predecessors; such as *Compton* v. *Collinson*, 1 H. Bl. 350, — *Ellah* v. *Leigh*, 5 T. R. 679, and *Clayton* v. *Adams*, 6 T. R. 604. In this uncertain state of the law on a subject of universal interest and of frequent recurrence, it was thought necessary to obtain a more solemn adjudication, which was done in the case of *Marshall* v. *Rutton* before cited. Thus the law is now clearly and unequivocally settled in England, that while the marriage subsists in law, a separation *de facto*, however solemnly made and strictly enforced by contract between the parties, viz. the husband and trustees for the wife, although an adequate fund is secured for her maintenance and support, the parties remaining in the realm, the wife can neither sue in her own name nor be sued for debts owing to or incurred by her, but that in either case a plea of coverture is a sufficient defence to the action. The hardship and injustice which might sometimes arise in the case of persons supplying the wife with necessaries, neither she nor her husband being liable at law, is mitigated in England by the power of the court of chancery over all trust funds. But at common law, while the marriage contract subsists, unless the husband is banished or has abjured the realm, the wife cannot be treated as a feme sole, saving however the custom of London, according to which, if a married woman trades by herself without the intermeddling of her husband, she may sue and be sued as a feme sole. Now without doubt the law is the same with us, in relation to the effect of a voluntary separation of husband and wife or the absence of the husband. The wife is still a feme covert and is to be treated as such in all judicial proceedings, for it will not be allowed to parties, by their own act, without, as it may be, any sufficient cause, to destroy the effect of that

relation which for most important reasons the laws of society have chosen to establish

The common law of England must be taken to be settled by the case of *Marshall* v. *Rutton*, not then declared as a new principle, but restored from the changes which great men had incautiously introduced into it. This common law is ours, and therefore in cases similar to those wherein decisions have taken place, we should undoubtedly adopt those decisions as the rule.

But the question which alone affects the present action in regard to the capacity of the plaintiff to sue, appears not to have been settled, and that is, the effect of a divorce *a mensa et thoro.* Such a divorce does not dissolve the marriage, though it separates the parties and establishes separate interests between them. By our statute the wife, after such a divorce, is not only free from the control of the husband, but all her interest in real estate is restored to her ; alimony is allowed her out of the estate of her husband ; and she is left to procure her own maintenance by her own labor, where the husband is unable to afford any alimony ; which is the case in most instances of divorce of this nature. In addition to these burdens she frequently has to support young children, without any means but her own industry. Shall she not maintain an action even against her husband for alimony, which, though able, he may refuse to pay ? May she not sue those who trespass upon her lands, or the tenants who may withhold the rent, or for the earnings of her labor, or the specific articles of property she may have purchased with the savings of her alimony, her rents or the rewards of her labor ? If not, the law, instead of protecting her from the oppression and abuse of power of the husband, has merely released him from an inconvenient connexion, reserving to him the right to deprive her of all comfort and support.[1] If she must join him in an action, he may release it ; he may receive her rents and discharge her tenants ; he may seize all her necessary articles of furniture and appropriate them to himself ; and he may intercept the little fruits of her industry which are absolutely

---

[1] See *Harteau* v. *Harteau* 14 Pick 186.

necessary for her support. If the common law allows all this, and there is no relief except by application to a court of equity, the common law is indeed most impotent, and where there is no court of equity, as there is not with us to these purposes, the system is most iniquitous. But it is not so. The common law only prohibits actions by women who have husbands alive, whose rights are not impaired by law but by compact between them, the law recognising no authority to make such compacts. Where the law itself has separated them, and established separate interests and separate property, it acknowledges no such absurdity as to continue the power of the husband over every thing but the person of the wife. No case appears in the English books, and without doubt because the interests of the wife so situated may be taken care of in chancery. In Bac. Abr. *Baron and Feme*, *M*, the editor, in the margin, puts the *quære*, whether a woman divorced *a mensa et thoro* may not be sued without her husband ; which is enough to show that until his time there had been no decision to the contrary. In a recently published book, which I trust from the eminence of its author and the merits of the work will soon become of common reference in our courts, (Kent's Commentaries, *vol.* 2, *p.* 136,) the learned author, after tracing the English authorities upon the subject of liability of married women living separate and having a maintenance, says, " I should apprehend that the wife could sue, and be sued, without her husband, when the separation between the husband and wife was by the act of the law, and that takes place not only in the case of a divorce *a mensa et thoro*, but also in the case of imprisonment of the husband as a punishment for crimes. Such a separation may, in this respect, be equivalent to transportation for a limited time ; and the sentence which suspended the marital power, suspends the disability of the wife to act for herself, because she cannot have the authority of her husband, and is necessarily deprived of his protection." So far as this opinion relates to the case of divorce, we fully concur with him, and are satisfied that, although the marriage is not to all purposes dissolved by a divorce *a mensa et thoro*, it is so far

*Dean*
*v.*
*Richmond.*

Dean
v.
Richmond.

suspended that the wife may maintain her rights by suit, whether for injuries done to her person or property, or in regard to contracts express or implied arising after the divorce, and that she shall not be obliged to join her husband in such suit ; and to the same extent she is liable to be sued alone, she being to all legal intents a feme sole in regard to subjects of this nature.[1]  Such however is not the law of England, it having been recently decided that coverture is a good plea, notwithstanding a divorce *a mensa et thoro*.  *Lewis* v. *Lee*, 3 Barn. & Cressw. 291.  But the difference in the administration of their law of divorce and ours, and the power of the court of chancery there to protect the suffering party, will sufficiently account for the seeming rigor of their common law on this subject.  If the husband is not liable for the debts of the wife after a divorce *a mensa*, the chief reason for denying her the right to sue alone, fails.

The difficulty then is not in respect to the capacity of the plaintiff in this action to sue, but whether the promissory note which is sued is her property or the property of the husband. The note was made payable to her by consent of her husband, and it was given for the price of real estate belonging to her before the marriage.  It is supposed to have been restored to her by the decree of the Court, which, after divorcing her from her husband, directs, " that all the real and personal estate which came to the husband by his marriage with the plaintiff should be restored to her."

It is a matter of much regret to find that the statute which gives jurisdiction to the Court, of the subject of divorces, contains no provision for restoration of personal property in the case of divorce *a mensa et thoro*.  It provides that the wife shall be restored to all her lands, tenements and hereditaments, and that she shall have reasonable allowance of alimony out of her husband's estate, having regard to the personal property which she carried to the husband.  Beyond this the Court have no authority to make provision for a suffering wife. The legislature seems to have overlooked the case, which we

---

[1] See a review of this subject and the comments on this case, in 2 Kent's Comm (3d ed.) 157 to 161.

find often happens, where necessary articles of furniture or other personal property remain in the possession of the husband, and where he may not be able to pay so much alimony as will enable the wife, who is driven from his doors by abusive or cruel conduct, to provide herself with such articles. The decree in regard to the personal property is void, and nothing can be claimed under it.[1]

It remains therefore only to be inquired, whether the legal effect of the divorce is to deprive the husband of his power over a chose in action which would survive to the wife, in case of his death, if he had not reduced it to possession. The cases of *Draper v. Jackson et ux.* 16 Mass. R. 480, and *Stanwood v. Stanwood et al.* 17 Mass. R. 57, show that in case of his death, the security remaining in its present form, it would be the sole property of the wife.[2] But we cannot see our way clear to determine that a divorce *a mensa et thoro* is to have the same effect. The statute has limited the effect of such a divorce. The husband's property or rights cannot be affected beyond the statute. Supposing the wife to have carried a fortune to him in personal property, it cannot be reached, except indirectly through alimony. By the marriage he acquired a right over all her personal property and choses in action. The latter he may reduce to possession without her consent. The divorce is only a legal separation terminable at the will of the parties, the marriage continuing in regard to every thing not necessarily withdrawn from its operation by the divorce. His power over the note sued is not extinguished. By the common law, if there be a divorce *a mensa et thoro*, and afterwards a legacy given to the wife, the husband may release it. Bac. Abr. *Baron and Feme*, D; 1 Rol. Abr. 343; *Stephens v. Totty*, Cro. Eliz. 908. This shows that the marital power over the property of the

<div style="margin-left:3em; text-align:right">

Dean
*v.*
Richmond.

468

</div>

---

[1] The law on this subject has been altered since this decision, so that upon every divorce from *bed and board* the court may make a decree for restoring to the wife the whole, or such part as they shall think just and reasonable, of the personal estate that shall have come to the husband by reason of the marriage, or for awarding to her the value thereof in money, to be paid by the husband. Revised Stat. *c.* 76, § 28.

[2] 2 Kent's Comm. (3d ed.) 135.

wife is not impaired by the divorce alone. It is only where the legal consequence of the divorce is a separation of property, that he is restrained from the exercise of his marital power. Upon the marriage choses in action as well as personal property go to the husband. It is only where he signifies his assent by leaving them uncalled for and unchanged until his death, that the property of the wife is restored The legislature seems to have contemplated cases like the present, and provided a remedy, though an ineffectual one In decreeing alimony the Court is to have regard to the personal property which came to the husband by the marriage, that is, may enlarge or diminish it according to the amount of that property. And this is the only legal way in which we can afford relief in the present instance, it being still in the power of the Court, on petition therefor, to increase the alimony ;[1] which was probably, from the mistake in the decree, graduated in some measure by the supposed fact, that all the wife's personal property at the marriage, as well as debts due to her or arising out of the sale of her property, would become hers.

The plaintiff therefore must be nonsuited.

---

[1] See *Bursler* v. *Bursler, ante*, 428, and n. 1